UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE MARCOS GOMES, | No. C 05-3946 SI (pr) |
| Plaintiff, | **ORDER GRANTING SUMMARY JUDGMENT** |
| v. | |
| SANDY KNIGHT, day nurse, | |
| Defendant.                                        / | |

## INTRODUCTION

Joe Marcos Gomes, formerly an inmate in Alameda County's Santa Rita Jail, filed this pro se civil rights action under 42 U.S.C. § 1983 alleging that defendant Sandy Knight was deliberately indifferent to a serious medical need. Knight now moves for summary judgment on the merits of the claim and, in the alternative, for dismissal based on Gomes' failure to exhaust administrative remedies. For the reasons discussed below, the motion for summary judgment will be granted.

## BACKGROUND

Joe Marcos Gomes filed this action after not receiving a permission slip for deck shoes and a prescription for ibuprofen from defendant Sandy Knight on August 30, 2005. Unless otherwise noted, the following facts are undisputed.

Deck shoes are rubber-soled, laceless slip-on shoes with a canvas upper surface. Inmates at the Santa Rita Jail may not possess deck shoes unless they have a permission slip – a "chrono" in jail parlance – for them. Inmates are given special athletic shoes to wear while exercising, but

otherwise generally wear sandals that have a wide strap over the forefoot. Deck shoes generally are prohibited because they are considered a status symbol and provide traction far better than the sandals. The better traction permits inmates wearing them to fight far more effectively and that increases the risk of harm to other inmates and jail staff. Khashayar Montazeri, M.D., a physician at Santa Rita Jail since about late 2004 or early 2005, stated that "[f]rom a medical perspective, deck shoes are of limited therapeutic value. However, they can be a medically safe and expeditious means of addressing certain inmate-patients' complaints. For example, they can be used to placate an inmate-patient seeking pain medication, when such medication appears unnecessary." Montazeri Decl., ¶ 3.

Ibuprofen was available at the Santa Rita Jail's commissary for purchase by inmates for $2.60 for a package of sixteen 200 mg. tablets. An inmate could only purchase one package per week.

In August 2005, Sandy Knight was employed as a nurse at Alameda County's Santa Rita Jail, where she had worked since 1990. She was a registered nurse and had been licensed in California since 1985.

Joe Marcos Gomes arrived at the Santa Rita Jail on August 1, 2005 and was incarcerated there until his transfer to San Quentin on October 24, 2005. He was a convicted parole violator in one case and a pretrial detainee in another. He has been in and out of custody several times, and had been a prisoner in the Santa Rita Jail before this occasion. Before he arrived at Santa Rita in August, he had been out of jail for six months, according to a letter he wrote to this court. See Prisoner's Application To Proceed In Forma Pauperis, last page. (Docket # 4.)

During an intake exam at the jail on August 2, 2005, Gomes reported chronic back problems for which he had been taking no medication. He reported no problems with his feet.

On August 4, 2005, Gomes submitted a medical request slip in which he asked to see medical health care staff for back pain due to an injury. He also stated that he needed "antifungal cream, hydrocortison [sic] cream, antacid medication, need my shot treatment for my blood. Need copies of my deck shoes and low bunk prescription which was issued to me back in April or May 2005." Knight's Exh. C.

2

During an August 15, 2005 exam, Gomes (who weighed 250 pounds and was 5'4" tall) reported a history of back discomfort and said he dealt with it through exercise. He reported no foot problems other than dry skin.

On August 17, 2005, Gomes was assessed by Donna Chatman, a licensed vocational nurse. He reported that he was fine but said he wanted a chrono for deck shoes. He also complained about foot fungus and a stiff neck. Chatman wrote that her plan was to give Gomes Motrin (400 mg., twice a day for 3 days) for neck discomfort, anti-fungal cream for athlete's foot, and a chrono for deck shoes. Dr. Montazeri approved the plan based on Chatman's assessment, but did not personally examine Gomes. Dr. Montazeri had seen Gomes six months earlier in April 2005; in response to Gomes' complaints about bilateral foot pain at that time, had "authorized his use of deck shoes. I did not know whether he actually was experiencing foot pain, but saw no harm in allowing him to use deck shoes." Montazeri Decl., ¶ 2. He further declared that Chapman had conferred with him on or about August 17: "Ms. Chatman, who had been with me when I authorized deck shoes for Mr. Gomes back in April, proposed re-issuing a chrono for them. Seeing no reason to disagree with her assessment, I issued such an order." Montazeri Decl., ¶ 4. As noted earlier, Dr. Montazeri thought that deck shoes were of "limited therapeutic value" from a medical perspective. Id. at ¶ 3.

On August 18, Gomes gave his chrono for deck shoes to housing unit deputy Beauchamp, apparently to obtain the shoes. The parties agree that Deputy Beauchamp did not obtain the deck shoes for Gomes, but disagree as to why he did not. According to Gomes, there was a disturbance at the facility and then Beauchamp lost the chrono. According to Knight's evidence, Beauchamp confiscated the chrono because it appeared to have been altered. Whatever the cause, the chrono was not filled and Gomes decided to try to obtain a replacement chrono.

On August 28, Gomes submitted a medical request slip in which he wrote: "Back pain need to renew back pain meds. Need copy of my deck shoe chrono being that staff lost it and never ordered my shoes from the detail/supply office." Knight Exh. I.

Gomes did not purchase ibuprofen from the inmate commissary when he requested to renew his back pain medications on August 28, even though he then had $25.04 in his inmate

3

account. Gomes' inmate trust account statement shows that he had $25.00 deposits to his account on August 7 and 28, and spent almost all of the money at the commissary that month: he spent $21.81 on August 8, $3.15 on August 15, and $21.05 on August 29.

On August 30, 2005, nurse Knight examined Gomes. Gomes reported needing deck shoes due to his obesity and/or bad back, for which he claimed he had been taking Motrin. In Knight's assessment, Gomes ambulated with a steady gait and had no signs of deformity. She concluded that there was no legitimate medical need for deck shoes for Gomes. Knight also determined that Gomes exhibited no signs of discomfort warranting pain medication, so she did not order medication. Knight told Gomes to buy ibuprofen at the commissary. Amended Complaint, p. 3; Knight Exh. E. Gomes threatened to file a grievance against Knight.

Disgruntled with Knight's response to his requests, Gomes submitted a medical request on September 2 in which he wrote that he "want[ed] to be seen by a real doctor not some moronic nurse who is a wannabe doctor." Knight Exh. J. He also wrote that his California Department of Corrections ("CDC") file proved that he was partially disabled and had a need for orthopedic shoes. He concluded that "the wannabe a doctor nurse had no right to deny me anything. She needs to practice her witchcraft at a trailer park." Id.

Nurse practitioner Elizabeth Mastroianni considered Gomes' deck shoe grievance by September 6, 2005. Like Knight, Mastroianni concluded that Gomes had no medical need for deck shoes. She ordered the deck shoe chrono discontinued.

Gomes continued to submit medical request slips to complain about the deck shoe issues. He did not show up for sick call on three days in September and October 2005. He also was observed to be walking with a steady gait. During the month of September, Gomes submitted medical request slips complaining that the onion bread caused gas and pain, the processed meat caused constipation, the food was too hot and burned his mouth, and his fingers hurt from writing with a skinny pen.

Knight provided a declaration from Dr. Montazeri opining about the necessity of the shoes and ibuprofen. Dr. Montazeri stated that, based on Knight's observation that Gomes walked comfortably with a steady gait and exhibited no signs of deformity or discomfort, and

4

the opinions of both Knight and Mastroianni that deck shoes were unnecessary, it was his "professional medical opinion that Mr. Gomes had no medical need for deck shoes. Because deck shoes are of very limited therapeutic value, the effect on his professed comfort would have been de minimis regardless." Montazeri Decl., ¶ 5. Dr. Montazeri also opined about the ibuprofen:

> Ibuprofen (aka Motrin, Advil) is a non-steroidal anti-inflammatory used for minor aches and pains. Based on my education, training and experience with ibuprofen, and my understanding regarding the details of Ms. Knight's August 30, 2005 evaluation of Mr. Gomes, as set forth above, it is my opinion that her decision not to give him ibuprofen was a judgment call that met the standard of care. Her judgment seems particularly appropriate since I am informed and believe Mr. Gomes took no medication for his alleged back discomfort during the period preceding his August-October 2005 incarceration and purchased no ibuprofen himself even though he was able to do so. Given these facts, it is my opinion that whether he was taking ibuprofen would have caused his comfort level to vary only slightly, if at all.

Montazeri Decl., ¶ 6.

Gomes submitted several documents that purport to show his medical needs. The only document that mentions footwear is a December 26, 2002 chrono from Pleasant Valley State Prison that expired on December 20, 2003, almost three years before his disagreement with Knight. The chrono states that Gomes had a chronic foot condition and should be issued a pair of "extra depth brown boots with a rubber sole to be worn where allowed by custody and vocational & visiting." Opposition, Exh. A, p. 6. Several of the documents he submitted are noteworthy for the absence of any order for special shoes, i.e., the medical accommodation chronos had other boxes checked while the boxes for special shoes were not checked. See Opposition, Exh. A, pp. 2, 3, Exh. C, p. 2. Pain relievers were prescribed occasionally during his prison stays. Opposition, Exh. A, pp. 7, 9, 10.

### VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred in Alameda County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, when a party challenges the merits of the opponent's claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Gomes' amended complaint is considered in deciding the pending motion because it is made under penalty of perjury. His opposition brief was not made under penalty of perjury and is not evidence, although the court has considered the exhibits attached to it.

The court's function on a summary judgment motion is not to make credibility

1 determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W.
2 Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence
3 must be viewed in the light most favorable to the nonmoving party, and the inferences to be
4 drawn from the facts must be viewed in a light most favorable to the nonmoving party.  See id.
5 at 631.

## DISCUSSION

A. Medical Care

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Accordingly, evaluating a claim of deliberate indifference necessitates examining the seriousness of the prisoner's need and the nature of the defendant's response.  See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Gomes was a prisoner during the relevant time and therefore was covered by the Eighth Amendment.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  Id.  The existence of chronic and substantial pain is an example of an indication that a prisoner has a serious need for medical treatment.  See id. at 1059-60.

A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health.  See Farmer, 511 U.S. at 837.  The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference.  Id.  A mere difference of opinion as to which medically acceptable course of treatment should be followed does not establish deliberate indifference.  See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Where doctors have

7

1   chosen one course of action and a prisoner-plaintiff contends that they should have chosen
2   another course of action, the plaintiff "must show that the course of treatment the doctors chose
3   was medically unacceptable under the circumstances, . . . and the plaintiff must show that they
4   chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v.
5   McIntosh, 90 F.3d 330, 332 (9th Cir.), cert. denied, 519 U.S. 1029 (1996).

    Knight argues in her motion that Gomes' claim fails on both the objective and subjective prongs of the Farmer test: Gomes did not have a serious medical need for ibuprofen or deck shoes and she did not act with deliberate indifference.

### 1.    Objectively Serious Medical Needs?

Ibuprofen: Gomes has failed to show a triable issue of fact that he had a serious medical need for ibuprofen when he submitted his request on August 28 or when he saw Knight on August 30, 2005. Gomes did not present any evidence that he actually was in substantial and chronic pain on either of those occasions; his request slip said simply "back pain need to renew back pain meds." Knight Exh. I. He does not dispute Knight's assessment that he did not appear to be in any physical discomfort. Unlike the deck shoes, the request for ibuprofen was not based on a lost prescription but was instead a request for a new prescription.[1] Gomes' last prescription for ibuprofen was for three days on August 17 and had ended more than ten days before he saw Knight. In addition to Knight's observation that Gomes did not appear to be in physical discomfort, one can infer that he was not in any noteworthy pain because he had not seen his pain to be worth spending his own money on at the canteen or before he was incarcerated. Knight had no obligation to order ibuprofen simply because an inmate demanded it, even when he became belligerent and threatened to file a grievance about the matter. Gomes has not presented evidence from which a reasonable jury could find that he had a serious medical need for pain medication.

---

[1] Neither party discusses it, but apparently the "prescription" for ibuprofen meant that it would be provided at no charge by the jail. Ibuprofen is an over-the-counter drug and does not require a prescription. Although the quantity may have been limited, inmates could purchase ibuprofen at the jail's commissary.

8

<u>Shoes</u>: Gomes has failed to show a triable issue of fact that he had a serious medical need for deck shoes when he saw Knight on August 30, 2005. The evidence is undisputed that deck shoes are at most of limited therapeutic value, that Gomes was walking with a normal gait when Knight saw him and that Gomes did not appear to be in discomfort when Knight saw him. The evidence also is undisputed that a nurse practitioner agreed with Knight's assessment that Gomes did not have a medical need for deck shoes. The evidence supports an inference that deck shoes might have made him more comfortable but the absence of comfort does not rise to the level of a serious medical need for Eighth Amendment purposes.

Gomes argues that his CDC prison medical records would have shown his need for special accommodations. This argument is flawed in that special accommodations do not necessarily mean special shoes. Indeed, the only CDC document he presented that mentioned special shoes was for "extra depth brown boots with a rubber sole" for one year ending December 20, 2003. Gomes Decl., Exh. A at 6. And he has not shown that deck shoes addressed the same condition that extra-depth brown boots did almost two years earlier. Moreover, several of his medical accommodation chronos are noteworthy for the absence of any order for special shoes.

2.    <u>Deliberate Indifference?</u>

Gomes has failed to raise a triable issue of fact that Knight acted with conscious disregard to a serious medical need for pain relief. Measuring the existence or severity of pain may be difficult, but the circumstances here certainly support the health care provider's determination that there was not a serious medical need in need of treatment. The evidence is undisputed that Knight evaluated Gomes and determined that he did not appear to be in any physical discomfort. The gist of the evidence is that Gomes went to see Knight with the attitude of "I got ibuprofen before; I want it now." The fact that the inmate demands something does not necessarily mean that the health care provider must give it to him. Gomes has failed to present any evidence that shows or reasonably supports an inference that Knight was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and drew the inference

9

that not providing a prescription for ibuprofen would result in pain for Gomes. See Farmer v. Brennan, 511 U.S. at 837.

Gomes suggests that Knight's direction that he could buy ibuprofen from the commissary was worthless. He makes much of the fact that the ibuprofen available from the commissary was limited in strength and quantity, but his argument does not show the existence of a triable issue of fact of his need for pain medication and does not show deliberate indifference thereto by Knight. Some relief was available from the ibuprofen he could have purchased at the commissary. Also, the ibuprofen prescriptions he did receive did not call for continuous long-term use of ibuprofen, but instead were for limited durations and on an as-needed basis. See Gomes Decl., Exh. A at 7 (naproxen prescribed for two months "as needed" starting in September 2006), 9 (ibuprofen prescribed for two weeks at SQSP starting on October 26, 2005 and for two weeks "as needed" at DVI starting on December 2, 2005), 10 (ibuprofen prescribed for four weeks "as needed" at DVI starting January 12, 2006). The fact that pain medications were prescribed to be used on an "as needed" basis undermines his argument that he necessarily would have run out of ibuprofen if he bought it from the commissary. He did not provide any evidence that, when Knight saw him, he was in constant pain that required pain relief every day in the highest dose ever prescribed to him. Gomes' argument that he was indigent is contradicted by the record that, at the time he submitted his request he did have funds in his account.

Gomes also has failed to show a triable issue of fact that Knight acted with deliberate indifference to a serious medical need for deck shoes. He points to documents in his CDC prison file but does not show that Knight actually knew of those documents. Documents that may exist in his files kept by the CDC are not necessarily available to the Santa Rita Jail medical staff. Even if Knight negligently failed to obtain the prison records, that negligence does not rise to the level of an Eighth Amendment violation. Moreover, the documents attached to his opposition simply do not support a reasonable inference that Knight was deliberately indifferent if Knight had obtained them. Several of the pages post-date the visit to nurse Knight. See Opposition, Exh. A at 1, 2, 3. To state the obvious: Knight cannot be said to have ignored a document not then in existence. Some documents were so old that, even if they were made

available to Knight, they would have little value in assessing his need on August 30, 2005 for special shoes or ibuprofen. The September 2002 disability verification form was three years old, lasted for only six months, and stated that Gomes was mobility-impaired but does not state that he needed special shoes or medication. See Gomes Decl., Exh. A at 4-5. Likewise, the CDC permission slips for a cane and special shoes expired in 2003, and did not show that he needed special shoes in August 2005. See Gomes Decl., Exh. A at 6. The pain medication prescriptions from state prisons were written after Knight saw Gomes and therefore do not address whether he needed ibuprofen in August 2005. See Gomes Decl., Exh. A at 7 (naproxen prescribed for two months starting in September 2006 at DVI, 9 (ibuprofen prescribed for two weeks starting October 26, 2005 at San Quentin, and for two weeks "as needed" starting December 2, 2005 at DVI, 10 (ibuprofen prescribed for four weeks "as needed" starting January 12, 2006 at DVI). Gomes' CDC chrono for a lower bunk/lower tier and his Comprehensive Accommodation Chrono post-date his visit to nurse Knight and therefore could not have provided her with notice of anything. See Gomes Decl., Exh. B at 1-2. Moreover, neither said Gomes was to be provided with special shoes or medication.

Gomes' arguments that Knight acted negligently do not help his Eighth Amendment claim because medical malpractice or negligence are insufficient to make out a violation of the Eighth Amendment. See Toguchi v. Chung, 391 F.3d 1051, 1060-61 (9th Cir. 2004); see, e.g., Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims stemming from alleged delays in administering pain medication, treating broken nose and providing replacement crutch, because claims did not amount to more than negligence); McGuckin, 974 F.2d at 1059 (mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's 8th Amendment rights); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain).

Even viewing the evidence in the light most favorable to him and drawing inferences

11

1  therefrom in his favor, Gomes has not shown a triable issue of fact that Knight knew of and
2  disregarded a serious medical need he possessed. "A complete failure of proof concerning an
3  essential element of the nonmoving party's case necessarily renders all other facts immaterial."
4  Celotex, 477 U.S. at 323. Defendant is entitled to summary judgment in her favor.

6  B.     Non-Exhaustion
7      Knight moved alternatively for dismissal due to plaintiff's failure to exhaust
8  administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). This
9  motion will be denied for two reasons. First, Knight did not properly notice the motion as a
10 motion made under the unenumerated part of Rule 12(b). See Wyatt v. Terhune, 315 F.3d 1108,
11 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003). Second, Knight did not provide evidence
12 showing how the inmate appeal system in the jail worked, and the absence of that information
13 prevents the court from determining what steps are necessary to exhaust and whether there are
14 any applicable exceptions to complete exhaustion in the jail. Knight failed to meet her burden
15 to prove and plead non-exhaustion. See Jones v. Bock, 127 S. Ct. 910, 921-22 (2007). The
16 alternative motion to dismiss based on non-exhaustion is therefore denied. The denial would be
17 without prejudice to renewing the motion but for the fact that the court has granted summary
18 judgment.

## CONCLUSION

21     For the foregoing reasons, defendant is entitled to judgment as a matter of law on Gomes'
22 claim. Defendant's motion for summary judgment is GRANTED. (Docket # 24.) Judgment will
23 now be entered in favor of defendants and against Gomes. The clerk shall close the file.
24     IT IS SO ORDERED.
25 Dated: February 21, 2007

_____
SUSAN ILLSTON
United States District Judge